UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DERRICK L. McCLURE,<br><br>     Plaintiff,<br><br>v.<br><br>DEBRA JOHNSON, et al.,<br><br>     Defendants. | Case No. 1:15-cv-00035<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Newbern |

To:     The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

The referral order in this prisoner civil rights action authorizes the Magistrate Judge to dispose or recommend disposition of pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 7.) Now pending are a motion for summary judgment (Doc. No. 214), filed by pro se and *in forma pauperis* Plaintiff Derrick McClure, and a motion for summary judgment filed by all defendants (Doc. Nos. 234, 242). For the following reasons, the Magistrate Judge RECOMMENDS that McClure's motion (Doc. No. 214) be DENIED. The Magistrate Judge will issue a separate report and recommendation regarding the defendants' motion.

## I.      Background

### A.  Factual History

The claims in this lawsuit arise from McClure's incarceration at the Turney Center Industrial Complex in 2015 and 2016. (Doc. No. 194.) During that time, the defendants were Tennessee Department of Correction employees working at Turney in the following capacities: Rachel McCauley was a corporal (Doc. No. 215, PageID# 1295); Daniel Epley was a sergeant

(Doc. No. 194, PageID# 1191); Michael Kemp was a sergeant (*id.* at PageID# 1198); Jerry Dickson was a captain and shift commander (*id.* at PageID# 1199); Billy Rosson was a sergeant (*id.* at PageID# 1200); and Defendants Joseph Lucas, James Wilkins, and Joseph Gilbert were correctional officers (*id.* at PageID# 1189, 1194, 1196). The following is a summary of the events at issue in this motion.[1]

### 1.    Alleged Excessive Force on January 21, 2015

On January 21, 2015, at around 2:30 p.m., McCauley ordered Lucas to check on McClure. (*Id.* at PageID# 1187.) Lucas arrived at McClure's cell, told him to "pull-up [his] shirt," and said something to McCauley. (*Id.*) McCauley responded by addressing McClure: "[f]or [] real, McClure[?] [W]e have to go through this again[?] [D]on[']t worry, I got you . . ." (*Id.*)

McClure felt harassed. (*See* Doc. No. 39, PageID# 269.) After McCauley left, McClure tried unsuccessfully to call her and Lucas back to his cell. (Doc. No. 194, PageID# 1187.) McClure began kicking the cell door to get the attention of the sergeant or another supervisor but stopped when he was ordered to do so by McCauley and Lucas. (*Id.*; Doc. No. 39, PageID# 269.) McClure asked to speak with a supervisor, but McCauley and Lucas refused. (Doc. No. 194, PageID# 1187.)

---

[1]    McClure did not file a statement of undisputed facts in support of his motion for summary judgment. This summary of relevant facts draws from McClure's complaint (Doc. No. 194) and the defendants' answer to it (Doc. No. 196); an affidavit that McClure filed on June 17, 2015, that briefly summarizes the events of January 21, 2015 (Doc. No. 38); the affidavits of two eyewitnesses to what took place in McClure's cell on January 21, 2015 (Doc. Nos. 39, 40); and admissions and interrogatory responses from McCauley, Lucas, and Gilbert, which McClure attached to his motion for summary judgment (Doc. No. 215, PageID# 1293–95, 1304–07, 1312–14, 1321–23). Although McClure's complaint is relied on to fill gaps in the factual context relevant to this motion, it is not verified and therefore is not relied upon as evidence at the summary judgment stage. *See Woodard v. Winters*, No. 2:16-cv-704, 2018 WL 3020336, at *5 n.2 (S.D. Ohio June 18, 2018) (finding that plaintiff's unverified complaint could not be used to support his motion for summary judgment); *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 573 (E.D.N.Y. 2017) (same).

McClure started kicking the door again. (Doc. No. 39, PageID# 269.) The Unit 3B-pod counsel emerged from his office "to see what was going on," at which point "McCauley told him: That's just McClure, he don't want anything. You don't have to worry about him, I got something for him and you will read his . . . write-up in the morning." (Doc. No. 194, PageID# 1187.)

At about 3:30 p.m., McCauley and Lucas entered McClure's cell and asked McClure's cellmate to leave. (*Id.*) McCauley then ordered McClure to hand over his shoes. (Doc. No. 38, PageID# 264.) McClure asked her why and explained that he wanted to see the unit sergeant or counsel. (*Id.*)

What happened next is disputed. McClure claims that McCauley ordered Lucas "to get [McClure's] shoes." (*Id.*) Lucas then "put his hands on [McClure]," who protested that officers were not to touch inmates unless they posed a threat to the safety of the prison. (*Id.*) After McCauley repeated the order to get McClure's shoes, Lucas put McClure in a choke-hold. (*Id.* at PageID# 265.) Meanwhile, McCauley had grabbed McClure's arms and twisted them behind his back, "trying to break [them] . . . ." (*Id.*) After McCauley threatened to pepper-spray McClure, McClure submitted to being placed in handcuffs. (Doc. No. 194, PageID# 1188.)

According to McCauley and Lucas, after McClure was ordered to hand over his shoes, he charged them and attempted to tackle Lucas. (Doc. No. 215, PageID# 1295, 1307.) Lucas then "wrapped his arms around [McClure's] mid[]section" to gain control of McClure, at which point McClure "struck [Lucas] in the face." (*Id.* at PageID# 1305, 1307.) McCauley was able to handcuff McClure's right hand but not his left because McClure continued to struggle. (*Id.* at PageID# 1307.) She threatened to use pepper-spray unless McClure complied, which he did. (*Id.*)

After handcuffing McClure, McCauley and Lucas escorted him to the Unit 3C core area and charged him with assault on staff. (Doc. No. 194, PageID# 1200.) There, McClure gave

Sergeant Rosson his shoes. (*Id.*) Rosson began escorting McClure to Unit 5, where McClure was to be held in segregation pending resolution of the assault charge. (*Id.*) On the way, Sergeant Kemp ordered Rosson "to bring [McClure] inside operation[s] so that [Kemp could] see how tough [McClure was]." (*Id.* at PageID# 1198.)

Once inside the operations area, Kemp ordered Rosson, Wilkins, and another correctional officer named Holt, to take McClure to a "closet area" to be strip searched. (*Id.*) After that search, McClure dressed and was taken "to the back of operation[s]" where Kemp "took pictures of [McClure's] face, neck, shoulders, chest, arms, wrists, and back, to make sure that [McClure] did not have any injuries . . . ." (*Id.*) He did not. (*Id.*; Doc. No. 38, PageID# 265.) McClure alleges that Kemp then "grab[bed] [McClure] by his throat and . . . pushed [McClure's] head up against the wall and was squeezing [McClure's] throat by choking him . . . ." (Doc. No. 194, PageID# 1198.) McClure claims that Kemp told him that he "is lucky that they don't kill him" and that "they kill n _ _ _ _ _ s like [McClure] around here." (*Id.*) Kemp denies these allegations. (Doc. No. 196, PageID# 1207, ¶¶ 15, 23.)

Dickson and Rosson were present during this incident. McClure alleges that Dickson told him to "be qu[ie]t" and "listen" to what he was being told and threatened that "they kill little 'n _ _ _ _ _ s' like [McClure] . . . around here and there will not be anything done about it." (Doc. No. 194, PageID# 1199.) McClure states that Rosson did not say anything during the incident, but failed to intervene to stop Kemp's use of force. (*Id.* at PageID# 1200.) Dickson and Rosson deny McClure's allegations. (Doc. No. 196, PageID# 1207, ¶¶ 16–17, 23.) McClure alleges that, eventually, Kemp told Wilkins to take McClure to "Unit 5 (H.S.A.) where his ass is going to be for a while." (Doc. No. 194, PageID# 1198.)

When McClure arrived at Unit 5, he was again strip searched. (Doc. No. 38, PageID# 265.) What happened next is also disputed. According to McClure, after he was dressed and handcuffed, Wilkins "got in [McClure's] face," calling him derogatory names before hitting McClure's mouth, which split his lip and knocked him into the wall. (*Id.* at PageID# 266.) McClure stood up and "asked to be taken to whatever room he was going to," only to be met with a blow from Gilbert's elbow that forced McClure's head into the wall and caused a "very deep" wound. (*Id.*) When Wilkins saw "all the blood," he exited the unit, leaving the other correctional officers to take McClure to his room. (*Id.*) McClure was bleeding for several hours before he was allowed to see a nurse. He received several stitches in his head the next day. (*Id.*)

Gilbert's version of events differs. Gilbert states that McClure was told "to face the wall . . . for the placement of handcuffs." (Doc. No. 215, PageID# 1322.) McClure allowed one cuff to be placed, but then began resisting. (*Id.*) Gilbert denies hitting McClure with his elbow and states that "no one put their hands on [McClure]." (*Id.* at PageID# 1314.) Gilbert also denies that anyone used derogatory language towards McClure. (*Id.* at PageID# 1313.) When medical staff was notified after the incident, McClure was not bleeding from his mouth and had a small abrasion on his forehead. (*Id.* at PageID# 1322.) Gilbert ultimately charged McClure with interference with officer duties. (*Id.* at PageID# 1316.)

### 2.     Charges Against McClure Stemming From the January 21, 2015 Incidents

At around 11:00 a.m. on February 13, 2015, McClure appeared before the prison disciplinary board for a hearing on the charges of assault on staff and interference with officer duties. (Doc. No. 194, PageID# 1191.) The board is comprised of six members; Epley was the disciplinary hearing officer, or DHO. (*Id.*; Doc. No. 215, PageID# 1325.) Lucas and McCauley

testified during the hearing, and the board found McClure guilty of the charges. (Doc. No. 194, PageID# 1191.)

According to McClure, Epley stated that he was aware that the events of January 21, 2015, were still being investigated and that McClure could "appeal to the warden [who] might over[]turn [the] disciplinary convictions." (*Id.*) McClure did so. On February 27, 2015, the warden overturned the assault on staff conviction but affirmed the conviction for interference with officer duties. (*See* Doc. No. 1-2, PageID# 114.)

### 3. Alleged Retaliation After McClure Filed This Action

McClure alleges that several defendants have retaliated against him since he filed this lawsuit in April 2015. On August 3, 2015, McClure was brought before the prison disciplinary board on a charge of sexual misconduct. (Doc. No. 194, PageID# 1192.) At that time, Epley had been served with the complaint in this action and was still serving as the DHO of the disciplinary board. (*Id.*) According to McClure, Epley "retaliated against [McClure] by convicting him of this disciplinary charge" and should not have been allowed to hear the charge after this action was filed. (*Id.*) McClure states that McCauley retaliated against him by "work[ing] around him" and "trying to entice or provoke [him] into an altercation with her." (*Id.* at PageID# 1188.) Epley and McCauley deny all allegations of retaliation. (Doc. No. 196, PageID# 1206, ¶¶ 5, 12, 13.)

McClure also alleges that he experienced retaliation from Gilbert. McClure claims that, on July 17, 2016, Gilbert falsely charged McClure with sexual misconduct. (Doc. No. 194, PageID# 1197.) McClure states that Gilbert filed this false disciplinary report to retaliate against McClure for filing this lawsuit and "to help support [the] defense that the Defendants are using." (*Id.*) McClure filed a grievance on August 8, 2016, complaining about the alleged retaliation, "but the grievance did not go through." (*Id.*) McClure states that, on November 3, 2016, Gilbert "filed

a false disciplinary report [against McClure] for 'Refusal [of] Cell Assignment,'" also in retaliation for McClure's filing of this action. (*Id.*) McClure also references a November 17, 2016 grievance in which McClure complained that Gilbert had threatened him. (*Id.*) Gilbert denies that he filed any false disciplinary reports or otherwise retaliated against McClure for filing this action. (Doc. No. 196, PageID# 1206–07, ¶¶ 10–11, 23.)

### B. Relevant Procedural History

McClure's second supplemental complaint is the operative complaint in this action. (Doc. No. 194.) McClure filed that complaint in response to the Court's September 28, 2017 order, which noted that McClure had moved to amend his complaint multiple times since he filed this action and instructed McClure to "file by October 20, 2017 a single, comprehensive complaint asserting: (1) all of his allegations against Defendants Daniel Epley, Joseph Gilbert, Joseph Lucas, Rachel McCauley, Michael Kemp, Billy Rosson, Jerry Dickson, and James Wilkins based on the incident of alleged excessive force on January 2[1], 2015 . . . and (2) any allegations from [another filing that McClure labeled] his second supplemental complaint (Doc. No. 124-1) that reference retaliation by one of these eight defendants." (Doc. No. 187, PageID# 1106–07.) In the second supplemental complaint, McClure asserts excessive force claims against all defendants and retaliation claims against McCauley, Epley, and Gilbert.[2] (Doc. No. 194.) He has sued the defendants in their individual capacities only and seeks a total of $150,000.00 in damages. (Doc. No. 214, PageID# 1273–74.)

---

[2]    In his response to the statement of undisputed facts that the defendants filed in support of their motion for summary judgment, McClure clarifies that he is only pursuing excessive force and retaliation claims. (Doc. No. 235, PageID# 1441, ¶ 11; *see also* Doc. No. 238, PageID# 1674, ¶ 8.)

On June 13, 2018, McClure filed a motion for summary judgment (Doc. No. 214) and a supporting memorandum (Doc. No. 215), to which he appended multiple exhibits (*id.* at PageID# 1292–1335). McClure failed to file a statement of undisputed material facts in support of his motion. Throughout his brief, McClure acknowledges that many of the facts at issue are disputed, but insists that, ultimately, the evidence weighs in his favor. (Doc. No. 215.) McClure concludes the motion by demanding a jury trial, reflecting a misunderstanding of the nature of a summary judgment motion. (Doc. No. 214, PageID# 1275.)

The defendants—except Wilkins, who had yet to be served—timely filed a response in opposition. (Doc. No. 225.) They argue that McClure's motion, "on its own and on its face, provides all of the evidence necessary to establish that there are in fact myriad genuine issues of material fact remaining in dispute in this case." (*Id.* at PageID# 1398.) They also point out that McClure "provided no statement of undisputed material facts, either separately or within the body of his motion or memorandum," and argue that McClure's motion must be denied on that ground alone. (*Id.* at PageID# 1399.)

In his reply, McClure acknowledges that his motion is deficient. (Doc. No. 227, PageID# 1404–05.) However, McClure reminds the Court that he is proceeding pro se and requests "a little bit of leniency . . . ." (*Id.* at PageID# 1405.) He also argues that, if his motion for summary judgment did not comply with the relevant rules, the Court "should have returned the summary judgment [motion] back to [him] with instructions to correct it . . . ." (*Id.*) Because the Court did not do that, it is McClure's position that "his summary judgment [motion] is properly filed before [the Court]." (*Id.*)

II.        **Legal Standards**

A.        **Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the plaintiff moves for summary judgment, it is the plaintiff's burden to (1) support any assertion that a fact cannot be . . . genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials" and (2) "show that the materials cited do not establish the . . . presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018). McClure must show that the defendants "cannot raise a genuine issue of fact regarding any element of the relevant claims." *Arnold v. Reliant Bank*, 932 F. Supp. 2d 840, 850 (M.D. Tenn. 2013).

In determining whether McClure has met his burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the defendants. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). At the summary judgment stage, the Court's role is not to weigh the evidence to decide what happened. Instead, the Court's function is to "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Local Rule 56.01 governs motions for summary judgment and provides that any such motion "must be accompanied by a separate, concise statement of the material facts as to which

the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Each fact "must be set forth in a separate, numbered paragraph . . . and be supported by specific citation to the record." *Id.* Further, the movant must insert the word "response" after each numbered paragraph and allow the nonmoving party "sufficient space to respond to the assertion that the fact is undisputed." *Id.* "The requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties," although such parties do not have to provide a copy of the statement of undisputed material facts in an editable electronic format. *Id.*

### B. Excessive Force and Retaliation

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). McClure asserts claims for violations of his Eighth Amendment right to be free from excessive uses of force while incarcerated and his First Amendment right to engage in constitutionally protected conduct without being subject to retaliation. *See Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (repeating the longstanding holding that the Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain . . .'" (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011))); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (explaining that, in the context of a First Amendment retaliation claim, "the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action").

A claim for excessive force is comprised of an objective component and a subjective component. *Cordell*, 759 F.3d at 580. To meet the subjective component, McClure must show that the defendants used force, not "'in a good-faith effort to maintain or restore discipline,'" but

"'maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To meet the objective component, McClure must demonstrate that the pain they inflicted was "'sufficiently serious.'" *Id.* (quoting *Williams*, 631 F.3d at 383).

To prevail on his First Amendment retaliation claims, McClure must "show that (1) he engaged in protected conduct; (2) the defendant[s] took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X*, 175 F.3d at 394).

## III.    Analysis

### A.    Local Rule 56.01(b)

The Court cannot grant McClure's motion for summary judgment because he failed to file a separate statement of undisputed material facts in support of that motion in compliance with Local Rule 56.01(b). McClure's request for "a little bit of leniency" due to his pro se status is at odds with the rule itself, which states that "[t]he requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties." M.D. Tenn. Rule 56.01(b) (statement of undisputed material facts); *see also Matthews v. Copeland*, 286 F. Supp. 3d 912, 915 (M.D. Tenn. 2017) (explaining that "'it is incumbent upon litigants, even those proceeding pro se, to follow the . . . rules of procedure,' and this includes 'local and state court rules'" (quoting *Fields v. Cty. of Lapeer*, 238 F.3d 420 (6th Cir. 2000)) (unpublished table decision). Exempting McClure from Local Rule 56.01(b) would negate its purpose, which is to "'prevent parties from unfairly shifting the burdens of litigation to the court,'" *Matthews*, 286 F. Supp. 3d at 916 (quoting *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007)), and to ensure that a party facing a motion for summary judgment

has adequate notice of and an opportunity to respond to the movant's claim that certain facts are undisputed. An exemption for McClure is particularly inappropriate given that the Court's scheduling order referred him to Local Rule 56.01 for summary judgment procedures and informed him that "[a]ny motion for summary judgment shall be accompanied by a separate, concise statement of material facts . . . ." (Doc. No. 197, PageID# 1213.) McClure could have moved to amend his motion for summary judgment after he became aware of its deficiency but chose not to, instead wrongly suggesting that it was the Court's responsibility to initiate that process for him.

### B.     The Merits of McClure's Motion

Even if his motion were not procedurally deficient, however, McClure has not shown that he is entitled to summary judgment. First, it is not at all clear that McClure wants summary judgment to be granted to him, given that he concludes his motion by requesting a jury trial. (Doc. No. 214, PageID# 1275.) Regardless, as the defendants emphasize in their response in opposition, McClure highlights the disputed nature of many of the facts at issue throughout his motion. (Doc. No. 225, PageID# 139–99.) McClure has also failed to support his motion by specific citation of the record to show the absence of a material factual dispute, as it was his burden to do.

### 1.     McClure's Excessive Force Claims Against McCauley, Lucas, and Gilbert

McClure claims that McCauley used excessive force when she bent his arms up behind his back in an effort to break them and that Lucas used excessive force by putting him in a choke-hold. (Doc. No. 214, PageID# 1258–59.) McClure argues that Gilbert used excessive force when he struck McClure with his elbow, driving McClure's head into a wall. (*Id.* at PageID# 1262.) McClure's citations of the record in support of these claims demonstrate the presence, not the absence, of genuine disputes about the material facts.

With respect to McCauley, McClure points the Court to an incident statement that McCauley prepared on January 21, 2015, in which she wrote that she and Lucas "used a hard empty hand technique in order to gain control of McClure." (Doc. No. 215, PageID# 1298.) McClure claims that use of such a technique is definitionally "excessive" under the TDOC Use of Force Policy. (*Id.*) The record shows, however, that the Use of Force Policy states that the technique is "the first level of force available to a correctional officer" and "is justified to subdue unruly inmates . . . and to defend staff, inmates, or other persons." (*Id.* at PageID# 1300.) As McClure concedes, McCauley stated in her admissions that "McClure was combative and was continuing to fight after one cuff was applied" and therefore she "use[]d that cuff to help gain compliance." (*Id.* (quoting Doc. No. 215, PageID# 1294).) She also stated that McClure charged Lucas after being instructed to hand over his shoes. (Doc. No. 215, PageID# 1295.) A genuine issue of fact exists, therefore, as to whether this use of force was justified.

Regarding Lucas, McClure concedes that, in Lucas's admissions, Lucas denies putting McClure in a choke-hold and instead claims that McClure attacked him. (Doc. No. 214, PageID# 1260 (quoting Doc. No. 215, PageID# 1305).) McClure questions the credibility of that denial. McClure points out that McCauley stated that Lucas wrapped his arms around McClure's mid-section in an effort to gain control of him, a detail that Lucas did not mention. (*Id.* at PageID# 1261 (quoting Doc. No. 215, PageID# 1307).) McClure also notes that Lucas's statement that McCauley did not threaten McClure with pepper-spray is inconsistent with McCauley's concession that she had done so. (*Id.* at PageID# 1261–62.) Similarly, McClure acknowledges that Gilbert denies striking McClure with his elbow in his admissions. (Doc. No. 214, PageID# 1263 (quoting Doc. No. 215, PageID# 1314).) But McClure again attacks the credibility of the denial, pointing out that his claim that "no one put their hands on [McClure]" contradicts Gilbert's January 21, 2015

incident statement, in which he admitted that he placed McClure "against the wall attempting to gain control" after McClure resisted handcuffing. (*Id.* at PageID# 1263–64; Doc. No. 215, PageID# 1314, 1316.) McClure also points to the digital photos of his head injury to emphasize the degree of force that was used. (Doc. No. 214, PageID# 1264; Doc. No. 215, PageID# 1317–18.) Resolution of these inconsistencies is, of course, a factual question.

Drawing all reasonable inferences in favor of McCauley, Lucas, and Gilbert, genuine issues of material fact exist as to whether each defendant used force in a good faith effort to restore discipline. At the summary judgment stage, it is not the Court's role to weigh credibility or reconcile conflicting facts. McClure is not entitled to summary judgment on his excessive force claims against these defendants.

### 2. McClure's Remaining Claims

McClure's failure to cite any portion of the record to establish the absence of a genuine factual dispute as to his remaining claims is fatal to his motion for summary judgment. McClure brings an excessive force claim against Epley for "wrongfully convicting [McClure] of assault on staff and interference with officer duties" (Doc. No. 214, PageID# 1266); an excessive force claim against Kemp for choking McClure, and against Rosson and Dickson for condoning the attack (*Id.* at PageID# 1268–72); a retaliation claim against McCauley for falsely charging McClure with assault on staff (Doc. No. 215, PageID# 1284); a retaliation claim against Epley for finding McClure guilty of a charge of sexual misconduct after this action was filed (Doc. No. 214, PageID# 1268); and a retaliation claim against Gilbert for bringing false disciplinary charges against McClure (*id.* at PageID# 1263). Although McClure provides limited record citations to support these claims—often to TDOC policy or an administrative form—those citations do not demonstrate the absence of a genuine factual dispute. As the moving party at summary judgment,

it is McClure's burden to support any assertion that a fact cannot be disputed by citing relevant portions of the record and explaining how the cited materials "do not establish the . . . presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B). McClure has not met that burden here. Further, the allegations and arguments in McClure's briefing are not evidence that can be used to demonstrate the absence of a genuine factual dispute at the summary judgment stage. *See Smith v. Alford*, No. 1:13-cv-694, 2015 WL 6159397, at *3 (W.D. Mich. Oct. 20, 2015) (explaining that arguments in parties' briefs are not summary judgment evidence). Without having put forward evidence to demonstrate the absence of factual disputes underlying his remaining claims, McClure is not entitled to summary judgment.

## IV.      Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMMEDS that McClure's motion for summary judgment (Doc. No. 214) be DENIED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of February, 2019.


ALISTAIR E. NEWBERN
United States Magistrate Judge